OPINION
{¶ 1} Appellant, Helen Shukaitis, appeals the decision of the Geauga County Juvenile Court that terminated her parental rights and granted permanent custody of her minor child, Renee Hill, to appellee, Geauga County Job and Family Services ("GCJFS"). For the reasons set forth below, we affirm the juvenile court's decision.
 {¶ 2} On October 23, 2000, GCJFS filed a complaint alleging that Renee Hill was a neglected and dependent child. The complaint was amended to allege:
 {¶ 3} "The child's father, Peter Hill, and mother, Helen Shukaitis, engage in violent physical arguments in front of Renee; the last dispute resulted in Peter Hill being arrested for Domestic Violence; During a dispute the maternal grandmother, Eileen Shukaitis, witnessed Peter Hill punching a wall and breaking his hand; Helen Shukaitis also suffers from depression and has indicated that she lacks the ability to care for herself at this time; According to Geauga County Sheriff's Deputies the family home is in deplorable condition and smells of animal urine and feces.
 {¶ 4} "WHEREFORE, Renee Hill is neglected pursuant to Ohio Revised Code § 2151.03(A)(2); and is dependent pursuant to Ohio Revised Code § 2151.04(B) and (C), and the GCJFS requests protective supervision and/or temporary custody."
 {¶ 5} Appellant and Hill entered pleas of true to the amended complaint. The juvenile court granted GCJFS protective supervision.
 {¶ 6} The juvenile court held a dispositional hearing on December 6, 2000. The court adopted a case plan requiring, among other things, that appellant obtain a mental health assessment and follow its recommendations, attend parenting classes, that appellant and Renee live with appellant's parents and not with Hill unless appellant and Hill participated in family counseling, and that appellant obtain and maintain stable employment.
 {¶ 7} Appellant's mental health assessment found that she did not present any major mental illness, that her MMPI-II profile was within normal range, and that she was not at risk for drug and alcohol problems.
 {¶ 8} On August 15, 2001, the juvenile court conducted a review hearing and considered GCJFS' motion for contempt against appellant for failure to comply with the court's orders. Appellant acknowledged that she was in contempt of court. The juvenile court sentenced appellant to ten days and suspended the sentence on the condition that appellant purge her contempt by complying with the court's orders. The juvenile court granted temporary custody to GCJFS and ordered an amended case plan prepared. The amended case plan required appellant to obtain suitable housing and maintain her home in a clean and uncluttered manner, attend counseling, obtain employment, and contribute to Renee's financial support.
 {¶ 9} On April 15, 2002, the juvenile court conducted a review hearing. At this hearing, the court found that appellant had maintained stable housing, and that cleanliness and clutter in the home did not present a significant issue that would prevent the child from being placed in the home. The court found that appellant had been terminated from her job and had been unable to maintain a stable financial situation, although she had been able to pay her basic living expenses with help from her family. The court also found that appellant had consistently attended counseling and had made progress in showing maturity and independence. The court found that appellant and Hill were still having significant contact even though both had expressed that it was not their intention to live together. The court found that it was in Renee's best interest to remain in the temporary custody of GCJFS. The court set a goal of transitioning Renee into appellant's home within sixty days.
 {¶ 10} On June 17, 2002, the juvenile court conducted a third review hearing. The court found it in the best interest of the child to maintain temporary custody with GCJFS because of the length of time Renee had been in foster care and continued problems with clutter and safety hazards in appellant's home. Beginning July 27, 2002, the court granted appellant extended overnight visitation so that Renee was in appellant's home five days and nights per week,
 {¶ 11} On August 23, 2002, GCJFS moved for permanent custody. GCJFS amended its motion on August 28, 2002. The court conducted a permanent custody hearing on October 17 and 28, 2002. In its judgment entry of November 8, 2002, the juvenile court granted GCJFS' motion and terminated appellant and Hill's parental rights. Appellant appeals this order asserting two assignments of error:
 {¶ 12} "[1.] The juvenile court's decision granting permanent custody to the Geauga County Job and Family Services was against the manifest weight of the evidence.
 {¶ 13} "[2.] The trial court erred by failing to consider the wishes of the child as the guardian ad litem never investigated nor expressed the child's wishes in court."
 {¶ 14} In her first assignment of error, appellant sets forth four issues for our review:
 {¶ 15} "Whether the manifest weight of the evidence supports the granting of permanent custody to the Geauga County Job and Family Services.
 {¶ 16} "Whether the child could not be and should not be placed with the appellant within a reasonable time.
 {¶ 17} "Whether the Geauga County Job and Family Services used reasonable case planning and diligent efforts to assist appellant in remedying the problems that caused removal of her minor child.
 {¶ 18} "Whether the granting of permanent custody was in the best interest of the child."
 {¶ 19} Since all of these issues are interrelated we address them together.
 {¶ 20} In In re Funk this court stated:
 {¶ 21} "R.C. 2151.41.4 sets forth the guidelines that a juvenile court must follow when deciding a motion for permanent custody. R.C. 2151.41.4(A)(1) mandates that the juvenile court must schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 22} "Following the hearing, R.C. 2151.41.4(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (1) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned and the parents cannot be located; or (3) the child is orphaned and there are no relatives of the child who are able to take permanent custody.
 {¶ 23} "Therefore, R.C. 2151.41.4(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the three circumstances delineated in R.C. 2151.41.4(B)(1) through (3) is presented before proceeding to a determination regarding the best interest of the child.
 {¶ 24} "If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.41.4(E), the juvenile court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.41.4(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 25} "Assuming the juvenile court ascertains that one of the three circumstances listed in R.C. 2151.41.4(B)(1) through (3) is presented, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.41.4(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 {¶ 26} "The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the three circumstances delineated in R.C. 2151.41.4(B)(1) through (3) is presented. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. (Internal quotations and citations omitted). In re Funk (Sept. 20, 2002), 11th Dist. Nos. 2002-P-0035 and 2002-P-0036, 2002-Ohio-4958, ¶ 34-39.
 {¶ 27} In its judgment entry the juvenile court initially found by clear and convincing evidence that the child was not abandoned and could not be placed with either of her parents within a reasonable time, and should not be placed with her parents. The court found that, notwithstanding reasonable case planning and diligent efforts by GCJFS to assist the parents to remedy the problems that initially caused Renee to be placed outside the home, the parents failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. The juvenile court was especially concerned with the continuing dysfunctional relationship between appellant and Hill, which exposed Renee to verbal hostility and exposed her to the risk of domestic violence. The court also cited appellant's inability to provide Renee a safe home environment.
 {¶ 28} The juvenile court then considered the best interests of the child. In this analysis the court considered:
 {¶ 29} "that of the two parents, the child has a stronger bond with her mother. * * * Over the extended period of time the child has spent in foster care, the child has established close parental bonds with her foster parents. The child's counselor has testified that if the child is permanently removed from the custody of her mother, the child is at risk of suffering devastating emotional harm. She estimated the grieving period to be from 6 months to a year. The child's counselor also indicated that if the child were to be reunited with the child's mother and then subsequently removed again, that that would also potentially cause devastating emotional harm to the child. * * *
 {¶ 30} "The child's relatives on both sides of her family have a relationship with the child. Both sets of grandparents have attempted to be supportive of the child and her parents. There is much conflict between the paternal grandparents and the child's mother. The mother's counselor attributes many of the mother's issues to the dysfunctional environment that she was raised in.
 {¶ 31} "The child is only 3 ½ years old. Efforts by the guardian ad litem to determine the wishes of the child regarding the issue of permanent custody were unsuccessful. The child was either unable or unwilling to express her wishes regarding the issue of permanent custody.
 {¶ 32} "The child has been in the temporary custody of GCJFS for approximately 14 months of the last 22-month consecutive period of time. In recent months the child has begun spending more time in her mother's home as a result of ongoing efforts to work towards reunification. She presently spends approximately 5 days of the week in her mother's home.
 {¶ 33} "The court further finds that the child is in need of a legally secure permanent placement, and that the grant of permanent custody to GCJFS is necessary to give the child the best opportunity to be placed in a legally secure permanent placement with the least likely risk of disruption. The court finds that given the mother's inability to maintain a safe and wholesome home environment, and the volatile relationship of the child's parents, it is highly likely that if the child were to be reunited with either parent she would be subject to removal at a later date."
 {¶ 34} The court also considered the factors set forth in R.C. 2151.41.4(E)(7) — (11) and found none applicable.
 {¶ 35} Appellant first argues that the juvenile court's decision to grant permanent custody is against the manifest weight of the evidence because she has substantially remedied the conditions that caused Renee to be removed from the home. We disagree.
 {¶ 36} The juvenile court first granted temporary custody to GCJFS by its entry dated August 17, 2001. In its entry the court found, among others, the following reasons for removing the child from the home: appellant's lack of maturity and co-dependence, lack of parenting skills, inability to provide for the basic needs of the child, and failure to provide a safe and consistent environment for the child.
 {¶ 37} Clear and convincing evidence was presented to show that appellant had failed continuously and repeatedly to substantially remedy these conditions. The record established that appellant was still co-dependent on Hill and continued to have substantial contact with him which often led to verbal disagreements which Renee witnessed. Susan Hill, Peter Hill's mother, described instances of appellant calling Hill twenty to thirty times in one night. She related instances of appellant berating Hill in public. She also testified that at least some of this conduct occurred in Renee's presence.
 {¶ 38} Appellant demonstrated her lack of maturity and parenting skills when she failed to timely complete the paperwork necessary to enroll the child in day care, failed to set and enforce limits with the child, and failed to respond to the child's emotional cues.
 {¶ 39} Appellant also failed to substantially remedy the problems with the up-keep of her home. There was evidence that sewing pins and needles were scattered about the floor of appellant's home, that appellant failed to rid her home of the animals that were creating unsanitary conditions until shortly before the permanent custody hearing, and that appellant seemed to properly maintain her home only when she was expecting a visit from someone involved with the child's case. Therefore, there was clear and convincing evidence from which the juvenile court could find that the child could not be placed in appellant's home within a reasonable time because appellant failed continuously and repeatedly to substantially remedy the conditions that caused the child to be removed from the home.
 {¶ 40} R.C. 2151.41.4(E) provides in relevant part:
 {¶ 41} "In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.35.3 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.35.3 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 42} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." * * *
 {¶ 43} Thus, upon finding that appellant had failed to substantially remedy these conditions, the juvenile court was required to find that Renee could not be placed with either parent within a reasonable time and should not be placed with her parents.[1]
 {¶ 44} Appellant next argues that GCJFS failed to use reasonable case planning and diligent efforts to assist her in remedying the problems that caused the child to be removed from the home. This argument is without merit.
 {¶ 45} The case plans submitted in this case consistently show that the goal was reunification. The social workers provided appellant with access to counseling, parent aides, parenting classes, day care assistance, and other services.
 {¶ 46} Appellant argues that the case aide would visit the home and generate detailed reports listing problem areas without sharing this information with appellant. However, the case aide testified that she reviewed these issues with appellant. Further, there is no evidence that appellant was unaware of the issues on which she needed to improve.
 {¶ 47} Appellant also argues that the goals of the GCJFS changed on August 1, 2002 when there was a meeting between some of those involved in Renee's case. Appellant attempts to impute sinister motives to this meeting because she was not invited to attend. Contrary to appellant's contention there is no indication in the record that the case plan changed after this meeting. Further, this meeting occurred shortly before the time within which GCJFS was required to file for permanent custody. R.C. 2151.41.3(D)(1).
 {¶ 48} Considering the record as a whole, the juvenile court's finding that GCJFS exercised reasonable case planning and diligent efforts is supported by clear and convincing evidence.
 {¶ 49} Appellant next argues that the juvenile court's decision was not in the best interest of the child. In determining the best interest of the child the court shall consider all relevant factors, including, but not limited to:
 {¶ 50} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 51} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 52} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 53} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 54} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.41.4(D).
 {¶ 55} Appellant focuses on the fact that Renee was with her five days a week and that appellant and Renee had a bonding, loving relationship. While the record is clear that appellant made significant progress in her ability to properly parent Renee and provide an appropriate environment for her care, the record is equally clear that the juvenile court properly found that it was in Renee's best interest to grant GCJFS permanent custody.
 {¶ 56} As set forth above, the juvenile court considered the factors set forth in R.C. 2151.41.4(D), including the relationship of Renee with others. In this regard the court found that granting permanent custody to GCJFS would be emotionally devastating. However, the court also considered that it was highly likely that, if placed with appellant, the child would have to be subsequently removed. There was ample evidence to support the court's conclusion that appellant's issues are a result of the dysfunctional environment in which she was raised. There was also testimony of conflict between appellant and the paternal grandparents. The court found that the child was either unable or unwilling to express her wishes with regard to permanent custody. The child had been in temporary custody for approximately fourteen months at the time of the hearing. Finally, the court found that none of the factors listed in R.C. 2151.41.4(E)(7) — (11) applied.
 {¶ 57} The juvenile court also pointed to appellant's inability to provide a safe, wholesome environment. This conclusion was substantially supported by evidence that appellant continued to have verbal disputes with Hill within earshot of Renee and the negative effect this would have on her.
 {¶ 58} The testimony of Renee's physician, Dr. Fantauzzo, also shows that appellant was unable to provide a safe, wholesome environment for the child. Dr. Fantauzzo diagnosed Renee with "failure to thrive" in August 2001. Prior to this diagnosis Renee had been in appellant's custody. On August 15, 2001, the court granted temporary custody to GCJFS. Dr. Fantauzzo's records stated that Renee's failure to thrive had resolved by June 2002. On August 27, 2002, the trial court granted appellant extended visitation so that Renee was with appellant five days and nights a week. Dr. Fantauzzo's records of September 10, 2002 indicate that Renee suffered from poor weight progression. This evidence establishes that Renee's health improved during the time she was primarily with her foster parents and digressed when primarily in appellant's care.
 {¶ 59} The record is also replete with evidence of the filthy manner in which appellant maintained her home. Appellant had several pets including cats, chinchillas, birds and fish. Approximately six months before the permanent custody hearing, Deputy Lewis of the Geauga County Sheriff's Department was called to appellant's home. Deputy Lewis testified that he remembered "being overwhelmed just immediately when the door opened from an odor or a stench of animals of some sort."
 {¶ 60} Deborah Craven, appellant's case aide, testified to heavy odors of defecation and urination around the animal cages and litter box. She also testified to spills that appellant failed to clean up which had dried causing things to stick to floors or counters. Craven also testified to having witnessed Renee playing in a dirty chinchilla cage appellant had left in the middle of the room. Appellant continued to keep animals in her apartment until shortly before the permanent custody hearing.
 {¶ 61} The record also established that appellant's living room carpet contained a significant number of sewing needles of which appellant was not aware. The record, as a whole, contains substantial evidence to establish by clear and convincing evidence that it was in the best interest of the child to grant permanent custody to GCJFS. Appellant's first assignment of error is without merit.
 {¶ 62} In her second assignment of error appellant argues that the trial court erred by failing to consider the wishes of the child as required by R.C 2151.41.4(D)(2). In its judgment entry the court stated, "The child is only 3 ½ years old. Efforts by the guardian ad litem to determine the wishes of the child regarding the issue of permanent custody were unsuccessful. The child was either unable or unwilling to express her wishes regarding the issue of permanent custody."
 {¶ 63} In support of her argument appellant cites to testimony of the verbal abilities of the child and the child's strong willed and independent nature. Appellant contends that the guardian ad litem failed to investigate and express the child's wishes as required by the statute.
 {¶ 64} In determining the best interest of the child, the court must consider, "[t]he wishes of the child, as expressed directly or through the child's guardian ad litem, with due regard for the maturity of the child." R.C. 2151.41.4(D)(2). In In re Jacobs (Aug. 25, 2000), 11th Dist. No. 1999-G-2231, 2000 Ohio App. LEXIS 3859, this court reaffirmed that:
 {¶ 65} "the provisions of R.C. 2151.41.4(D) are mandatory and must be scrupulously observed. Thus, the failure to discuss each of the factors set forth in R.C. 2151.41.4(D) when reaching a determination concerning the best interest of the child is prejudicial error. There must be indication on the record that the trial court considered all four factors found in R.C. 2151.41.4(D) when reaching its judgment. Moreover, no factor is solely dispositive of the issue, and each needs to be given proper consideration." (Internal quotations and citations omitted.) Id. at 12-13.
 {¶ 66} In In re Salsgiver (July 19, 2002), 2002-G-2411,2002-Ohio-3712, the lower court's judgment entry stated, "[t]he child is not old enough to express a preference regarding her living arrangement."Id. at ¶ 26. See, also, In re Salsgiver (Mar. 14, 2003), 11th Dist. No. 2002-G-2478, 2003 Ohio App. LEXIS 1140. We held that the lower court's failure to discuss the child's wishes as expressed by the guardian ad litem was reversible error. The instant case is distinguishable from Salsgiver. There, the court simply determined that the child was too young to express his wishes and does not discuss efforts by the guardian ad litem. Nothing indicates what the child's wishes were. Here, the court had before it the guardian ad litem's report. In her report the guardian ad litem stated that she questioned Renee on at least one occasion regarding where she wished to live. Renee indicated her desire to live with her foster mother.
 {¶ 67} The trial court's judgment entry technically complies with the mandates of In re Jacobs, supra, when it states, "The child is only 3 ½ years old. Efforts by the guardian ad litem to determine the wishes of the child regarding the issue of permanent custody were unsuccessful. The child was either unable or unwilling to express her wishes regarding the issue of permanent custody." While the juvenile court may consider the child's maturity when determining the weight to give such evidence, it may not simply ignore the evidence, as did the trial court below. Further, the guardian ad litem's report states that it would be in Renee's best interests for the juvenile court to grant permanent custody in GCJFS. The trial court's judgment entry should have indicated that it considered this evidence in determining the wishes of the child under R.C. 2151.41.4(D).
 {¶ 68} While the trial court should have been more specific in its judgment entry in discussing its consideration of the factors under R.C. 2151.41.4(D), it is clear that the trial court complied with the requirements of the statute. The trial court had before it sufficient evidence of the child's wishes as expressed in the guardian ad litem's report. Therefore, the trial court did not err in determining the best interest of the child. Appellant's second assignment of error is without merit.
 {¶ 69} The judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed.
JUDITH A. CHRISTLEY, J., concurs.
[1]. The juvenile court also had before it clear and convincing evidence that Hill had failed continuously and repeatedly to substantially remedy the conditions causing the child to be removed from the home, to wit, his anger management issues and the relationship between him and appellant.